See also., D.C., 506 F.Supp. 234.

**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, Plaintiff,**

v.

**TRANS WORLD AIRLINES, INC. et al., Defendants,**

**Christopher J. Clark et al., Defendants-Intervenors.**

**No. 78 Civ. 3707 (KTD).**

United States District Court, S. D. New York.

Jan. 26, 1981.

Cohen, Weiss & Simon, New York City, for plaintiff; Michael E. Abram, Jay P. Levy-Warren, New York City, of counsel.

Chadbourne, Parke, Whiteside & Wolff, New York City, for Trans World Airlines, Inc.; Donald I. Strauber and Henry J. Oechler, Jr., New York City, of counsel.

Haley, Bader & Potts, Chicago, Ill., for defendants-intervenors; Raymond C. Fay, Chicago, Ill., Grau & Weiner, P.C., New York City, of counsel.

## OPINION & ORDER

KEVIN THOMAS DUFFY, District Judge:

The material facts in this case are not in dispute. On August 10, 1978, Trans World Airlines, Inc. [hereinafter "TWA"] announced its policy that flight engineers would no longer be required to retire from that position upon reaching age 60. The change in policy was mandated by the Age Discrimination in Employment Act [hereinafter "ADEA"], 29 U.S.C. § 623(f)(2), unless TWA determined that a retirement age of 60 was a bona fide occupational qualification.

Immediately upon announcement of the new policy, the exclusive bargaining agent for pilots and flight engineers, Air Line Pilots Association [hereinafter "ALPA"], filed suit. ALPA alleges that the unilateral change in policy by TWA violated ALPA's bargaining rights under the Railway Labor Act [hereinafter "RLA"], 45 U.S.C. § 156. In addition to enforcing their bargaining rights, ALPA seeks a declaratory judgment that the change in policy was not required by the ADEA.

ALPA now moves for partial summary judgment compelling TWA to bargain under Section 6 of the RLA as to the effects of TWA's new retirement policy for flight engineers. ALPA emphasizes the limited nature of the relief sought on this motion. It is not seeking a declaration that the ADEA did not require a change in age 60 retirement policy for flight engineers nor is ALPA seeking to enjoin TWA from employing flight engineers past age 60. ALPA asks only that TWA be required to bargain under Section 6 as to the effects of its new policy. ALPA contends that the RLA requires TWA to bargain with ALPA because TWA's change in its retirement policy generated a "major dispute" between ALPA and TWA.

■ It is true that when a major dispute exists, the RLA requires that its exhaustive procedures, including mandatory bargaining under Section 6, be complied with before any action is taken to alter existing terms and conditions of employees. *Brothers of Railroad Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1969).

■ There is, however, no major dispute in this case. "Major disputes" involve attempts to formulate a new agreement or change the terms of an existing agreement. *Elgin, J & E Ry. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1289, 89 L.Ed. 1886 (1945). By contrast, "minor disputes" are those growing out of the interpretation or application of particular provisions of an existing agreement. *Id.*

As noted by the Eighth Circuit, the "line between changes in working conditions that are or are not allowed by a collective bargaining agreement is very thin." *United Transport U. v. Burlington Northern, Inc.*, 458 F.2d 354, 357 (8th Cir. 1972). *See also Rutland Railway Corp. v. Brotherhood of Locomotive Eng.*, 307 F.2d 21 (2d Cir. 1962), *cert. denied*, 372 U.S. 954, 83 S.Ct. 949, 9 L.Ed.2d 978 (1963). Accordingly, the Second Circuit has articulated certain crite-

ria for distinguishing between major and minor disputes:

It is a major dispute if the present agreements between the [Carrier] and the [Union] contain express provisions contrary to the position taken by the [Carrier] or if the clear implication of these agreements is inconsistent with the [Carrier's] proposals. It is a minor dispute if there is a clearly governing provision in the present agreements, although its precise requirements are ambiguous; and it is also minor if what the [Carrier] seeks to do is supported by customary and ordinary interpretations of the language of the agreements.

*Rutland Railway Corp. v. Brotherhood of Locomotive Eng.*, 307 F.2d at 33.

■ Applying these criteria to the case at bar, it is clear that a major dispute between ALPA and TWA does not exist. TWA's new retirement policy is neither contrary to nor inconsistent with the agreement between TWA and ALPA. The 1978 Working Agreement approved by ALPA expressly allows TWA to retain employees after age 60 by written waiver of the age limit.[1] The 1978 Working Agreement also provides for the disbursement of retirement benefits in the event of employment past age 60.[2] At most there exists a dispute over TWA's interpretation and/or application of that provision of the agreement to "over 60" flight engineers.

■ In any event, ALPA may not now ask to negotiate the terms of a new retirement policy under Section 6 when (i) it had ample opportunity to do so when the 1979 Working Agreement was negotiated; and (ii) when the 1979 Working Agreement states that the entire Agreement shall remain in full force and effect through Sep-

tember 30, 1981 and may not be reopened under Section 6 of the RLA any sooner than 120 days prior to September 30, 1981 unless the parties mutually agree otherwise.[3] *See Seaboard World Airlines, Inc. v. TWU*, 443 F.2d 437 (2d Cir. 1971); *Flight Engineers' Inter. Ass'n v. American Airlines, Inc.*, 303 F.2d 5, 13 (5th Cir. 1960).

Accordingly, ALPA's motion for partial summary judgment is denied.

---

1. Article 4.1 of Your TWA Retirement and Trust Annuity Plans, as amended effective October 1, 1977, states that: "The normal retirement date is the Member's 60th birthday." Article 4.2 states that: "Members must retire by their normal retirement date unless written approval of the Company is granted for continuance in employment." These provisions are incorporated by reference in the 1978 Working Agreement, Section 23, p. 9.

2. Article 4.3 of Your TWA Retirement and Trust Annuity Plans, as amended effective October 1, 1977, incorporated by reference in the 1978 Working Agreement, Section 23, p. 9.

3. Section 32 of the 1979 Working Agreement, p. 179.